2024 IL App (2d) 240078-U
No. 2-24-0078
Order filed April 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 24-CF-0141 |
| | ) | |
| THOMAS ROBINSON, | ) | Honorable |
| | ) | Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justice Mullen concurred in the judgment.
Presiding Justice McLaren dissented.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in denying defendant pretrial release, where the State presented sufficient evidence to establish by clear and convincing evidence that the proof is evident and presumption great that defendant committed the charged offenses, defendant's criminal history includes acts of violence, and defendant was on probation when he committed the charged offenses, rendering it unlikely that he would comply with conditions less than detention.   Affirmed.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023),

defendant, Thomas Robinson, timely appeals the order of the circuit court of Kane County granting

the State's petition to detain him pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023),

commonly known as the Pretrial Fairness Act (Act).[1]  See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).   For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On January 24, 2024, defendant was charged with armed robbery—no firearm (720 ILCS 5/18-2(a)(1) (West 2022)) (Class X), aggravated robbery (*id.* § 18-1(b)(1)) (Class 1), aggravated battery in a public place (*id.* § 12-3.05(c)) (Class 3), and robbery *(id.* § 18-1(a)) (Class 2).   The charges stemmed from an incident that occurred on July 20, 2023, at Hurd's Island Park in Aurora, wherein defendant and others, while armed with a dangerous weapon (a pellet gun), took property, including a phone, wallet, and $29 cash from Juan Ramirez-Garcia, while striking him several times in the head and face with a closed fist and hitting the top of his head with the pellet gun. Ramirez-Garcia explained to police that he was fishing when a woman, later identified as Amber Pajeau, approached him and asked for money.   When he told Pajeau he did not have any money, she walked over to two males, who then approached him and demanded money.   When he refused, they struck him repeatedly with a closed fist and one of the men, later identified as Daniel Coleman, struck him on the head with a pellet gun.   Coleman and Pajeau were arrested, and Pajeau later cooperated with the State and implicated defendant as the second male offender.

¶ 5      On January 26, 2024, the State filed a verified petition to deny pretrial release, alleging that defendant was charged with detainable offenses and his release posed a real and present threat to

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.   Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

community safety. That same day, the court held a hearing on the State's motion. The State first recounted for the court defendant's criminal history, including convictions for burglary, theft, criminal trespass to vehicle, domestic battery, and aggravated battery to a handicapped person; defendant was on probation for domestic battery at the time of the charged offenses. The State also entered into evidence seven exhibits, including a police synopsis related to the current charges, police synopses from prior incidents and convictions, photographs of Ramirez-Garcia's injuries, and a seven-page, detailed police investigation report summarizing an officer's second interview with Pajeau (exhibit No. 4).[2] The State summarized at length the statements that Ramirez-Garcia, Pajeau, and another witness, Nicole Barkes, gave to police. As relevant on appeal, we note that Ramirez-Garcia identified Pajeau and Coleman, but not defendant. Barkes originally told police she did not have any information about the robbery, but later told them, "I know who did it. It was [defendant] and [Coleman]. They did it for $30, and I wasn't anywhere near it." (We note that Barkes, Pajeau, Coleman, and defendant apparently know each other from a homeless encampment, and Pajeau and defendant used to be in a relationship. Pajeau was a victim of defendant's prior domestic battery conviction). Barkes explained that, on the evening of July 20, 2023, Pajeau, Coleman, and defendant told her what they had done, defendant was dressed all in black, and she thought Coleman was wearing black pants and no shirt. Pajeau, in turn, also told police what had happened, including that defendant and Coleman attacked the victim, but she

---

[2]We note that the record also contains the public safety assessment report, which scored defendant as a six (the highest ranking) on both the new-criminal-activity and failure-to-appear scales. In part, it also noted that defendant was presently charged with a violent offense and had three or more prior violent convictions.

minimized her role in the incident. Pajeau confirmed that Coleman also told Barkes about the incident. No offer was made to Pajeau by the State in exchange for her statement.

¶ 6 The State argued that the "significant amount of evidence" sufficed to prove by clear and convincing evidence that the proof was evident and presumption great that defendant committed the alleged offenses. The State argued that defendant was a real and present threat to the community because defendant did not know the victim and it was simply a "crime of opportunity," which could happen to anyone in the community. It also summarized defendant's violent criminal history, including details from his prior domestic batteries, as summarized in the police synopses, and noted that defendant's aggravated battery of a handicapped person occurred at Hesed House, a homeless shelter. The State explained that defendant commits various crimes against many different people in the community, sometimes people he knows and other times by taking advantage of people "that are just there." Finally, noting that defendant was on probation at the time of this offense, the State argued that no release conditions could mitigate the real and present threat to community safety because defendant had demonstrated that he simply would not follow them.

¶ 7 Defense counsel noted that, although defendant was homeless, he could attend court dates via bus or public transportation, and, further, that defendant was interested in attending a treatment program for substance abuse. Counsel next challenged the sufficiency of the State's evidence, noting that there was no indication that defendant's DNA and/or fingerprints were found on the pellet gun. Further, counsel argued that Barkes was biased (because she claimed to have no information until she was in custody and was suddenly motivated by self-interest), that her story made no sense, and certain details, such as her description of the clothing the attackers wore, contradicted those provided by Ramirez-Garcia. As to Pajeau, counsel argued that her statement

was unreliable and incredible; minimized her involvement and was made in her own self-interest; was nonsensical for a multitude of reasons; was unreliable because she admitted she was high on cocaine at the time of the offense and cannot retain information when she is high; and, as defendant's ex-girlfriend with a history of domestic disputes, Pajeau had other reasons to be biased. Counsel also argued that the police synopsis from the July 2023 incident was incredibly brief and lacked detail, Ramirez-Garcia did not identify defendant, and there was no video or other evidence showing that defendant was involved in this offense. As to dangerousness, counsel argued that the charged offenses were relatively old, having taken place in July 2023, and there had been no other allegations against him since. Defendant's criminal history, counsel noted, did not include robbery or the use of weapons, the thefts were non-violent, and the relationships involved in domestic violence make it a vastly different nature of crime than non-violent crimes concerning property. Finally, as to pretrial release conditions, counsel requested that the court impose a no-contact order, electronic home monitoring (EHM), and substance abuse treatment.

¶ 8 The court granted the State's petition. In its oral and written findings, the court noted that the State met its burden of establishing by clear and convincing evidence that the proof was evident and presumption great that defendant committed the charged offenses. It rejected defendant's arguments as ones more appropriate for a trial and noted that the proof-beyond-reasonable-doubt standard was not at issue in the detention hearing. Moreover, it rejected defendant's arguments concerning conflicts in witness testimony, noting that Ramirez-Garcia was consistent that he was first approached by Pajeau and then two males attacked him; he identified Coleman as one of the men. Also, Barkes recounted what defendant and Coleman told her and, so, those statements were ones against interest, not hearsay. Pajeau gave statements about what she witnessed, but also about what defendant and Coleman told her. Finally, the court found that the police synopsis

for this case, combined with the proffer about police interviews with Barkes and Pajeau, as well as Pajeau's interview contained in exhibit No. 4, collectively satisfied the State's burden to demonstrate that the proof was evident and presumption great that defendant committed the charged, detainable offenses. "It's clear that the two of them [defendant and Coleman] approached the victim together. It's clear that they were working with each other when committing the taking of the money from the person of Mr. Ramirez[-Garcia]."

¶ 9　　As to dangerousness, the court found, "[t]his was a brazen attack in public of a person they don't know." The crime occurred in a "very public place" against a person whom defendant did not know and who was fishing and minding his own business before he was attacked. "Based on the randomness and brazen nature of the attack," along with defendant's criminal history, the court found the State satisfied its burden to show defendant posed a threat to the community. Further, at the time of these offenses, defendant was on probation for a domestic battery and two retail thefts, and he violated the conditions of probation by committing these offenses.

¶ 10　　Finally, the court found that no conditions of release could mitigate the risk of danger. The court noted that "this is a defendant who will not follow the law" and has an extensive criminal history with convictions for retail theft and burglary, as well as four domestic battery convictions and a conviction for aggravated battery to a handicapped person. The court found, "this is a defendant who has demonstrated for the past six years that he cannot follow the law—that he cannot contain himself and follow the law." As such, the court rejected defendant's suggested conditions of substance abuse evaluations and treatment, as those were available to him before and since these offenses occurred, but defendant had not taken any steps towards obtaining those. "Based on his performance on probation, I have no faith that he would do this at all[,] now that his back is up against the wall." The court also noted that, because defendant does not have a

permanent residence, such that he could be confined to an area with EHM, that was not an option for the court at this time. Defendant was on probation for three felony cases at the time of the current offenses, and, in violation of the terms of probation, has been charged with four more felony offenses. The court found that defendant's inability to conform to the law demonstrated that there are no release conditions that could assure community safety.

¶ 11 On January 29, 2024, defendant filed a notice of appeal, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On March 18, 2024, defendant submitted a declination letter, notifying the court that he would not be submitting a Rule 604(h) memorandum. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). On April 4, 2024, the State submitted its memorandum opposing defendant's appeal.

¶ 12                                II. ANALYSIS

¶ 13 Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e). As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* §§ 110-6.1(a)(1)-(7), (e)(2)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human*

*Services*, 2023 IL 127712, ¶ 74. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

¶ 14 We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs when the court's decision is unreasonable. *Id.* Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable. *Id*.

¶ 15 In his notice of appeal, defendant asserts first that the State failed to meet its burden to establish by clear and convincing evidence that the proof is evident and presumption great that he committed the charged offenses. He elaborates that there was insufficient evidence, where: (1) the victim was unable to identify defendant in a photo lineup; (2) there was no DNA or fingerprint evidence presented; (3) Barke's statement was not credible, was inconsistent with the victim's account (she said one male had no shirt on but the victim said both attackers wore shirts), and "everything she said was from word of mouth"; (4) Pajeau's statement was not credible, and she was biased, as she gave the statement to help herself, defendant was her ex-boyfriend, and she admitted that she was high during the incident and that she does not retain memory from periods when she is high; and (5) the police synopsis lacks "a lot of information." We disagree.

¶ 16 As noted by the trial court, many of these arguments, attacking the credibility of witnesses or the lack of physical evidence tying defendant to the offenses, are better suited for trial. The trial court here was to assess whether the State's evidence *collectively* established by clear and convincing evidence, *not* beyond a reasonable doubt, that defendant committed the charged

detainable offenses. See 725 ILCS 5/110-6.1(e)(1) (West 2022). Clearly, the court's finding here was not contrary to the manifest weight of the evidence. The police synopsis, while brief and lacking detail, reflects that two men and one woman attacked Ramirez-Garcia. Ramirez-Garcia identified the woman as Pajeau and one of the men as Coleman. Barkes stated that Coleman, defendant, and Pajeau admitted to her they committed the offenses. Pajeau agreed that the conversation with Barkes occurred, and admitted that she, Coleman, and defendant committed the offenses. Defendant has a history of violent offenses, as well as a history with Pajeau. Where a police synopsis alone may suffice to meet the State's burden (see, *e.g.*, *People v. Horne*, 2023 IL App (2d) 230382, ¶ 14), and where the rules of evidence do not apply to detention hearings, (725 ILCS 5/110-6.1(f)(5) (West 2022)), the court's finding here that the State's evidence, in total, satisfied its burden by clear and convincing evidence was not unreasonable.

¶ 17 Next, defendant asserts that the State failed to meet its burden to establish that his pretrial release would pose a real and present threat to the safety of any person or persons or the community. He elaborates that any potential danger is not real and present, as the charged incident is "old" because it took place in July 2023. Further, defendant notes that he has no history of any robberies or violence concerning property; rather, his violent history concerns domestic relationships, which are different in nature. We disagree.

¶ 18 As the State noted, the charged offenses, coupled with defendant's criminal history, reflect that defendant has engaged in violence with both people he knows *and* strangers. The court described the charged offenses as "brazen," noting that defendant took advantage of an opportunity to attack someone he did not know, and he did so while on probation for another conviction involving violence. Further, the public safety assessment report rated defendant as the highest ranking for risk of new criminal activity, while noting that defendant was presently charged with

a violent offense and had three or more prior violent convictions. In sum, the court's finding that the State met its burden to establish by clear and convincing evidence that defendant presents a real and present threat of danger to the community was not unreasonable.

¶ 19 Finally, defendant argues that the State failed to meet its burden to establish by clear and convincing evidence that no condition or combination of conditions would reasonably ensure his appearance for later hearing or prevent him from being charged with a subsequent felony or Class A misdemeanor. He elaborates that a no-contact order would suffice because he "doesn't even know this person." Further, he is willing to do substance abuse treatment and could be ordered not to consume alcohol or drugs. Finally, defendant argues that EHM could be placed with his coordinates of the normal place that he stays, even if he is homeless. "Homelessness should not be a reason that someone is detained."

¶ 20 Defendant's reliance on this ground of relief is misplaced, as it applies to cases involving revocation of pretrial release and, thus, does not apply here. 725 ILCS 5/110-6(a) (West 2022). In any event, even if defendant meant to challenge the court's finding that less-restrictive conditions would not suffice to mitigate his threat to the community, we would reject this argument. Frankly, the fact that defendant "doesn't even know this person" that he allegedly attacked does not work in his favor, as it suggests a heightened risk of danger to the community at large that would not easily be mitigated by conditions short of detention. Further, the court rejected defendant's proposal of substance abuse treatment, as he had demonstrated no initiative to engage in such treatment before or after this offense. In addition, and critically, defendant was not detained because he is homeless. He was detained because the court found, based on more than sufficient evidence, that, where defendant demonstrated a propensity to commit crimes, even

while on probation for other crimes, he would not likely comply with any conditions the court imposed upon him.  See, *e.g.*, *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 14.

¶ 21                                III. CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 23    Affirmed.

¶ 24    PRESIDING JUSTICE McLAREN, dissenting:

¶ 25    Again, there is no verbiage in the majority disposition or the State's memorandum that contains any of the following terms: forfeiture, waiver, procedural default, citation to the record, citation to authority, or cohesive argument.  There was no memorandum filed by the defendant, thus there could not possibly be any such terms contained in a non-existent memorandum. Unfortunately, the majority disposition, as well, fails to mention the defendant's blatant forfeiture, let alone the State's forfeiture of forfeiture.  The majority is willing to become the advocate of the defendant and provide citations to the record, citations to authority, and a semblance of a cohesive argument.  The fact that both parties are willing to burden this court with the mantle of advocacy does not speak well for the adversary system of justice, especially since this is virtually identical to the procedural posture and failure to recognize blatant forfeiture in *People v. Ponce*, 2024 IL App (2d) 230595-U and *People v. Carl Jones III*, 2024 IL App (2d) 240090-U.

¶ 26    The reason why I searched for those terms is because when the appellate court entertains an appeal, there are several elementary rules that have evolved for at least 50 years or so.  I submit the 4 most important rules are (1) preserving and perfecting the claimed errors in the trial court for appellate review; (2) raising those errors in the appellate court; (3) filing a sufficient record for review of all claimed errors; (4) filing a written brief or memorandum in the appellate court that cites to the record, cites to authority, and makes a cohesive argument so that the appellate court

may impartially consider the merits of the appeal without advocating on behalf of any party or individual.

¶ 27    There is nothing in this record, filed on behalf of the defendant, that cites to the record, to authority, and presents a cohesive argument.  Failing to recognize this serious breach of the burden on review, the majority disposition proceeds on the premise that it may, *sub silencio*, advocate on the part of the defendant.  Having commented on this basic principal of appellate review and the failure of the majority to address forfeiture suggests something other than ignorance of these burdens on review.  It is possible they do not want to address the problem because the rules allow counsel to decide not to file anything that cites to the record, cites to authority and makes a cohesive argument . Defendants in an adversarial system of justice are entitled to effective representation from counsel, and impartiality from the judiciary. Failing to address a problem does not affect its existence.  The fact that counsel may not be punished for failing to file a memorandum does not make it appropriate or acceptable if it forces forfeiture for failing to properly represent a client by failing to cite to the record, authority, or make a cohesive argument— in other words, gross ineffectiveness of counsel. In appropriate circumstances, forfeiture may be waived by the court, and it may address the merits as it deems appropriate.  But first the court must address the issue, otherwise equal protection under the law is subverted and perverted.

¶ 28    What the majority is refusing to acknowledge is the following law regarding procedural due process and minimum burdens on review that counsel is to demonstrate and establish.

> "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented (134 Ill.2d R. 341(e)(7) [eff. Oct. 1, 2020]), and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or

search the record for error [citation]. Accordingly, these contentions are waived." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993).

¶ 29 Additionally,

" 'Rule 604(h) requires the notice of appeal to include a description of the relief to be requested "*and the grounds for the relief requested*." ' (Emphasis in original.) *[People v.] Inman*, 2023 IL App (4th) 230864 (quoting Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023)). Accordingly, 'some form of argument is required, along with justification for claiming entitlement to relief-like references to the record, the evidence presented, or, if possible, legal authority.' *Id*. A reviewing court 'cannot be expected to formulate an argument for defendant out of whole cloth.' *Id.* ¶ 13. 'The appellate court is not a depository in which the appellant may dump the burden of argument and research.' *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). As a reviewing court, we are entitled to have the issues clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5." *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 42-43.

¶ 30 Checked boxes in the notice of appeal are the equivalent of the issues raised in an appellate brief. See Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020). As such, the issues are claims of error. If there is additional elaboration then there might be additional argument, citation to authority, or something more specific than the conclusory claim in the body of the checked box.

¶ 31 We have the authority to view the record to see if there is an insufficiency or related error. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("We do not feel that a court of review should be compelled to serve as an advocate for the appellee or

that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so.").

¶ 32    If a review of the record shows any evidence to support the judgment, *vis-à-vis* no evidence whatsoever to support the judgment, then, if there is a failure to cite to the record, authority, or make a cohesive argument, forfeiture should be declared. I have reviewed the record and there is some evidence of record to determine all issues on appeal are forfeited. Forfeiture, however, is a limitation on the parties, not the reviewing court, and we may overlook forfeiture when necessary to reach a just result or maintain a sound body of precedent. *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 15. The majority has not addressed forfeiture by either the defendant or the State, nor has it addressed my remonstrations.

¶ 33    I will honor the forfeiture of the State, but I will not honor the forfeiture of defendant. The forfeiture of the State allows us to address the issues presented by defendant. But defendant's forfeiture requires this court to do something we should not do, advocate on behalf of defendant, and to present his case for his counsel.

¶ 34    I have no desire to join the majority in advocating on behalf of defendant. See *People v. Duckworth*, 2024 IL App (5th) 230911, ¶ 8 (dismissal of appeal granted due to like forfeiture) and *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 28 (affirmance of appeal due to like forfeiture).

¶ 35    I believe appellate counsel has an obligation to effectively represent defendant. Effective representation requires, at minimum, a memorandum properly citing to the record, appropriate authority, and making a cohesive argument. If, as an officer of the court, counsel would deem such actions frivolous, then a motion to withdraw and to allow the defendant to appear *pro se* would be appropriate. The right to appeal is apparent. Presently, the right to a meaningful appeal, without advocacy by this court, is not. I, therefore, would order counsel to file a memorandum in

support of the claims counsel believes are not frivolous.   See *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 31.   Accordingly, I dissent.